and the Interior Workers and Benefits Council. Council? Always sit at the council table. Okay. You may proceed. I'm George B. and I'm here on behalf of Luce Velegas. So I think that the big point that we need to make today is that we have an injured worker who had limited vocational experience, skills, education. After this injury, he diligently searched for employment on his own without professional assistance from the employer. He could not find simple, regular, continuous employment, which really is the measure of one's employability after such an injury. And as the only reasonable inference that can be drawn under all circumstances, that he is not regularly employable pursuant to Section 8A. Could I ask you some threshold questions before we get into that? The respondent, the treasurer, by and through the AG's office, has raised jurisdictional questions. Are you aware of that? Yes. Could you comment on that before we get too far into your argument in the minutes? Well, it was a new issue for me. I mean, I never recall hearing any kind of argument like this. And I wasn't losing any sleep over this one, Your Honor, when it came to jurisdiction because we filed on time. And there was never any issue based on that type prior. It would appear as if the Attorney General intends to raise this every time they have a case where your petition for review before the commission is filed more than 30 days after the arbitrator's decision, or you ask for summons before the circuit court more than 20 days after the decision comes out from the commission. And it appears as if this is their habit now of raising it at the appellate level instead of raising it where it belongs at the circuit level. And if I may, to your point, the statute reads that what's determinative is the receipt. I understand that. Precisely. But you can't prove a receipt up here. You could prove it at the circuit court. And with our continuing shift to electronic stuff in this business, no longer are green cards used at the commission by which those dates can be ascertained. So it's all made for us. But I can attest as an officer in the court, this was filed on time. Well, that's what you'll have an opportunity to do, I guess, if we send it back. Right. And then you can come back up for a second time because it wasn't raised below where it should have been raised. Yeah. I'm hoping that's not the case for Mr. DeLay, but, right? I guess I'll have to sign an affidavit, and I imagine that would take care of it. All right. Well, in any event, our main point here, well, I think I already did that, but also the commission's decision finding partial loss of use of the arm rather than an odd lot of permanent total disability is against the manifest weight of the evidence. Mr. DeLay has established such an odd lot of permanent total disability. It is undisputed that he had these restrictions resulting from this injury which prevented his returning to his regular line of employment. The surgeon even suggested that he continue to treat after he discharged him, which he did, specifying the score of her hospital. Because there was an orange line of students here. We have Dr. Tu failing to, well, put it to you this way, he would not recommend more care if he truly felt that the petitioner was capable of doing it. And surely enough, when Mr. Lace presented to Strozier and was cared for by Dr. Singh, it was found that he was incapable of lifting and carrying more than five pounds. We're talking about an auto shock mechanic here with that affected member. And so we're finding that after the surgery, but perhaps more telling, during his care with Dr. Tu, four months after the injury, we're seeing findings that Mr. Lace can't lift more than 10 pounds. And around six months after the accident, he's lacking the whole strength for most functional activities. He's ordered to undergo dozens of more physical therapy sessions, but he's cut off at seven. The reason? Quote, the employer will not pay the bill. That was the reason that Dr. Tu gave him. The petitioner can't return to work with no restrictions, as the commission sort of hints at. I'll get into that a little more. He's fast flying the face of any determination that there was no restriction on his activities. Moreover, you see the commission conceding that point backhandedly when they find that the injured worker can, quote, perform some form of employment. But as we know, one need not be reduced to policy or to maybe be able to do something in order to follow up or to attain the benefits associated with an ILAP, permanence of disability. Public policy instead is much more generous than that, and it applies here. Now, speaking of vocational rehabilitation, it's characterized as a, quote, perfunctory effort by the petitioner or injured worker, but that's not supported by the evidence. Yes, the commission, without citing any evidence, says there was a reasonably stable labor market for his services, but there is no such evidence. The latest contact of hundreds of employers who tried whatever jobs he was offered, all snow or hail, he could not physically tolerate those jobs. And let's not forget, it's the public policy of the state, as in section 8A, for the employer to provide such services, as well as pay maintenance benefits during the job search process. So here's a man with no money coming in, contrary to the law, not getting any help with returning to the workplace, to the workforce, in some reasonable capacity, but we have this sort of blaming him rather than the class A misdemeanor that the employer that he's under the man struts. The commission ignores these facts, and what gets worse is they're ignoring the opinions of the certified vocational rehabilitation counselor who testified in this case. Chief and Susan Entenberg found main findings supporting the latest experience when he tried and failed to find work on his own. Quote, there is no, and I apologize on page 21, I forgot her name for a moment, that there is no reasonably stable labor market for this petitioner. That was her finding. And there's no evidence that refutes that. It stands uncontroverted. And, you know, we can talk about manifest wage, which obviously counsel, I'm sure, will look forward to doing, which I love to have behind me when I come here, when I'm a winner on the way up. But, I mean, we're ignoring evidence. Neither the arbitrators or the commission's decision mentioned the testimony of Susan Entenberg. She's the only voter to have evidence other than what Louis Flay has generated in his failed job search. All that, completely ignored, not even mentioned. There's something wrong with that. Now, counsel, before you adjourn, I don't know that we specifically answered the issue. There were two jurisdictional questions raised by the treasurer. One was the commission's jurisdiction over the arbitrator's decision. I think you've adequately covered that. But you also have the issue, they've raised the issue of whether the circuit court had jurisdiction, alleging that there's nothing in the record that affirmatively establishes when the claimant received notice of the commission's May 17, 2016, decision. So where in the record can you call our attention to that establishes when the claimant received notice of the commission's decision? I don't think there is anything. Well, isn't that jurisdiction? If it's contested and I can produce an affidavit, which I can from my office notes, as to when I received that decision, then I think that would be clear to us. Well, you can't do it here in this court of review. I mean, it's not in the record now, correct? Right. Isn't that, you know, Justice Hoffman's position was well taken. It was not raised, it's raised for the first time on appeal. So it does put you in a difficult defensive position. But you do understand that notwithstanding whether we like it or not, jurisdiction can be raised at any time. But I think that's a pretty significant impediment that it's not in the record, because the record has to show that it was issued within 20 days of receiving the notice. And you're candidly telling us we appreciate it. There's nothing in the record that defines the date, correct, at the moment? Right. Nor am I aware of any mechanism whereby our judicial system provides for that. I don't know. I mean, it would be 36 years in November that I'd be practicing. I've never seen this issue in my life. Okay, I guess that doesn't mean everything, but there is just, again, no mechanism for that information to be brought before the system that I have ever learned of. Well, we learn something new all the time. I'm not saying that it's, you know, I mean, it does catch you off guard at sort of the 11th hour, but it's not something we can ignore because, you know, jurisdiction rules are special. Either we have it or we don't. Right. And it can never be waived. Exactly. I understand. Well, I guess we all have a new concern that we need to address. Are you asking us then to remand it for you to be able to establish it? You can't tender it to us. We're not a trial court, obviously. Well, frankly, Your Honor, I'm not sure what the proper procedure should be. Frankly, I don't think it's a valid issue because, well, an additive for me or any of the attorneys on time would rectify that. You're 100% correct. The problem is they raise it here for the first time where you can't do that. So if we send it back, as we have with three other cases involving the Attorney General's office, we come up here and we waste an hour on this, if we have a jurisdictional question, send it right back downstairs for an evidentiary hearing that should have been held when the Attorney General raised this issue in circuit court. And then we'd only have to come up here once. I completely agree, Your Honor. I'm sure Mr. Villegas would agree as well, considering the timeframes involved here. You understand we can't waive jurisdiction. No matter how compelling your argument is, we can't waive it. Right. I understand. Sorry, I continue with my argument. I'm going to save it for next time. We'll let you make that decision if you can tell us where the wind's blowing. Well, I was looking into Mr. Villegas' experiences at U&U body vendor where he tried to send bodies with one hand because he couldn't use the other. With the limousine service where he couldn't lift suitcases in the trunk of the car. The employment agency where they just stopped returning his calls essentially, but rather than that, went out on an assembly line and spent time on aluminum items and couldn't tolerate the work. And contrary to the suggestions made by counsel, didn't just quit or resign but had to stop because he couldn't do it. I think that's the fairest way to view this. Three hundred, four hundred prospective employers he contacts and winds up on the street living with his bra at the age of 49. And no overhead is supplied by the employer. His complaints at the time of hearing individually lift more than 10 to 20 pounds. And as we know from eighth grade education, never attaining a GED whose motive is to return to work would need such help. But again, an anti-starter was the employer's responsibility to provide help, rehab, and they don't do it. Something is amiss here. In that situation, if you really put this case in perspective, there was nothing significant. What's the message that the bar and the employers would get from this case? The message is this, that respondents or employers can now, first of all, not even buy workers' coverage, can nearly cut off the funding for care, not pay for the whole rehab when it's indicated by every measure, and if they can just get a full duty release, even though all the rest of the medical facts indicate otherwise, when the tendon is ruptured and also wastes away, and the only chance to take care of that thing is within the two or three days immediately following such an entry. He doesn't get in for a month because there's no coverage. But get that full duty release from the surgeon who's done cutting. Surgeons are always going to have that approach, that mindset. And now there's no chance of getting a just compensation, even if it's found necessary by a certified vocational rehabilitation expert. That's the problem with this decision. I have nothing further. So you'll have time in reply. Counselor, you may respond. Do you want to answer some of the questions the bench has concerning the procedure? Yes, Your Honor. Good afternoon. Please, the Court. Who's taking that name? For the record, please. Okay. I'm not sure if I should, since you're going to start my way. Yeah, but you always start by saying who you are. Okay. My name is Marietta Breck. I'm assistant attorney general here representing the defendant, Illinois State Treasurer as ex officio custodian of the Injured Workers Benefit Fund. And I'm going to start with a jurisdictional issue. You can pour yourself some water. There's water right there. I just had a drink. It's not helping. Hopefully, once I start talking, it will loosen up a little bit. I want to start by saying that I'm sorry, Your Honors, that this is the third time that we have raised this issue for the first time on appeal. These cases occurred close together, and this case was actually briefed in the trial court and the circuit court before the decision was issued in the first case. But our trial court bureau is aware of the issue now, and I believe that they will raise it in the future. Well, let's hope they do, because this is a total waste of time. It's a waste of your opponent's time, it's a waste of your time, and quite frankly, it is a waste of our time. We have to prepare these cases on the merits, and you raise the jurisdictional issue for the first time on appeal, as opposed to raising it where it belonged, down in the circuit court. Now, jurisdiction can't be waived. You have every right in the world to raise it up here, but it just doesn't lend itself to judicial economy the way your office is doing it. So maybe you should have to have a talk with the supervisor in that office to make sure from now on whomever from your office that handles these cases, if it's going to be your procedure to file a jurisdictional claim every time the petition for review at the commission is more than 30 days after the arbitrator's decision, or the petition for judicial review is filed more than 20 days after the commission's decision, then tell them to raise it at the trial court so that it only comes up here one time. And if they won't listen to you, I think you should talk to their supervisor and tell them to tell them to do it. Okay. I believe my supervisor has spoken to the supervisor of the Tribal Bureau, but we will also report what Your Honors have said in this case. All right. Thank you. You've raised two separate attacks on jurisdiction. One, the first one deals with the commission's subject matter jurisdiction to review the arbitrator's decision. And basically you're saying that jurisdiction there is uncertain. There's nothing in the record to support the claimant's declaration that he received the decision on December 27, 2014. So on that issue, however, didn't the claimant's attorney declare when he received the arbitrator's decision? There is a statement in the petition for review where it has a place for you to mark when the decision was received. Our concern there is that that doesn't have any real evidential value. The petition for review is evidence for some purposes. It is evidence that the petition for review was filed, what it said, and also because it's got a file stamp when it was filed. But it's not necessarily evidence for every statement, every factual statement that is contained. Well, wasn't it signed by the petitioner's attorney? It was signed, but there is no formal verification. So what? He's a lawyer. He's made the statement. Do you have any evidence that he didn't receive it on the day he claimed he did? I don't have any evidence suggesting that. Our concern is just that normally even attorneys, when they make factual statements, have to support them with affidavits or merits. Can I ask you another way? Do you have any case law you can point us to that says that the declaration of an attorney under those circumstances is insufficient? I don't have a specific case that says under those circumstances it's insufficient. What about your second attack on jurisdiction? But we are suggesting that there's any special evidentiary rule here. And the same evidence that can be used to prove the commission's decision can be a similar evidence. It would be different based on the different decision. But similar evidence, we're not asking for or suggesting that any special evidentiary standard or that there has to be any per se rules of proof. In some cases, there won't have to be any evidence introduced to the record in order to prove jurisdiction. Because if a person files their request for summons for review of the commission's decision within 20 days from the issuance of the decision, then the court's jurisdiction will appear affirmatively in the record because the circuit court will be able to infer as a matter of logic that it must have been received within the 20 days. It occurs to me that the position of your office is every time the petition doesn't file within 30 days of the arbitrator's decision or 20 days of the commission's decision, you're going to raise the jurisdictional complaint. Well, if it can't be inferred from the record or if the commission sends by certified mail that they already have it in the record, our position is, though, that if there is no evidence in the record, either by inference or something that's already placed in the record, that the person who seeks review does have to place some evidence in the record. But there are simple ways to do this. If it's not coming by certified mail, then if they come pick it up in person, they can get the commission to stamp it with a receipt. Ma'am, they're going to have it every time you raise this issue. The petitioner's attorney is going to sign an affidavit, and he's going to say, I got it on such and such a date, and I'm willing to bet you that such and such a date is going to be within 30 days of the arbitrator's decision or 20 days of the commission's decision. And that's going to be the end of it because in none of these cases did you have any evidence that they did not receive it within the statutory period of time. These cases are exactly the same. There just wasn't any evidence that they did. Yes. And if that may not be the best evidence, but if that's the best evidence available under the circumstance, we think that would be fine if they produce an affidavit. But we feel that this is required because the Ohio Supreme Court has said that affirmative evidence must appear in the record. And if there is, in order for the affirmative evidence appearing in the record, it means that you don't simply assume because there is no evidence that suggests it's not the case. We believe that this means that there must be some kind of affirmative evidence. Well, on the second issue, at least, counsel has graciously and courteously acknowledged that that evidence doesn't exist with regard to the issue in self-assault. He's acknowledged that. Yes. But hopefully this is a learning experience for everybody on how to handle it in the future. That is what we are hoping to do, is to get some, is to have everyone know how to proceed going forward. But I can assure this Court that we're not trying to soundbite anyone. And no, I don't think you were trying to soundbite anyone. I'm just suggesting that the means by which your office chooses, has chosen to do it in these three cases was a waste of time, as opposed to doing what should have been done in the circuit court. Nobody's trying to soundbite anybody. We realize it. Evidently, no one bothered to tell your trial division exactly what the position of your appellate division would be if it wasn't within 30 days of the arbitrator's decision, or 20 days of the commission's decision. So I take it now they've been told we're not going to see any more of these cases? Yes. Okay. They have been told. Would this Court like me to address any issue of the merits? I don't believe so. All right. Well, if this Court has nothing further with respect to these issues, we'll stand on our feet and we ask the Court to waive the circuit court's judgment and demand for a determination on these issues, or an alternative to a permanent judgment of the circuit court upholding the commission's decision. Thank you, Counsel. Counsel, you may reply. I recall Justice Hudson asking you to reply whether there was some evidence. In the record that Affirmative League establishes, yes. To establish my receipt of the commission, the date of the receipt of the commission decision? Right. Okay. Was your inquiry only with respect to that decision? The other issue, right. I think you've explained that you had filed, you declared when you received the other with regard to the appeal of the arbitrator's decision, you made a representation on that, but not on this issue, correct? I'm trying to remember how this system works. We didn't see it. We didn't find anything that said when you got the commission's decision. Then it probably doesn't exist. That's what you seem to indicate, yes. I'm trying to remember what your provisions make. Apparently not, since counsel's raising this defense. Okay. I just want to make sure I get it. Right. That was the question. Thank you, Counsel Ball, for your arguments in this matter. It will be taken under advisement. The written disposition shall issue.